IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

MARIA PRUNIER,

       Plaintiff,

vs.                                                                                                          Civ. No. 04-738 MV/LFG

GALE NORTON, SECRETARY, UNITED
STATES DEPARTMENT OF THE
INTERIOR,

       Defendant.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on Defendants' Motion for Summary Judgment, filed July 1, 2005, **[Doc. No. 27]**. The Court, having considered the motion, response, reply, relevant law, and being otherwise fully informed, finds that the motion is well-taken and will be **GRANTED**.

## FACTUAL BACKGROUND[1]

Plaintiff, a non-Indian woman, has been employed by the Bureau of Indian Affairs ("BIA") since 1987, most recently as a special education teacher. In November 1999, the BIA's Office of Indian Education Programs, Shiprock Agency ("Agency") issued a Vacancy Announcement for an Education Specialist. The Vacancy Announcement stated, in part, that "[i]n filling this vacancy, priority in selection will be given to candidates who present proof of eligibility for Indian Preference, in accordance with the Indian Preference Act. Consideration will be given to Non-

---

    [1] The following facts are either undisputed or, where disputed, construed in the light most favorable to Plaintiff.

Indian applicants in the absence of qualified Indian Preference eligible." Plaintiff and five others applied for this position. None of the applicants was selected. The Agency School Board meetings from January 19, 2000, state that the "[t]he Agency Education Office received six applications, but none qualified. The position will be re-advertised for another 30 days."

A second Vacancy Announcement was issued in January 2000 that was essentially identical to the first. Again, Plaintiff applied for the position. On February 17, 2000, Plaintiff and Ms. Janet Slowman Chee, a Navajo woman, were interviewed for the position by the Agency School Board. During Plaintiff's interview, one member of the interview panel asked Plaintiff about her accent and whether people had difficulty understanding her speech. At the conclusion of the interviews, Agency School Board Member Jerry Bodie motioned that Ms. Chee be hired for the position. After a brief discussion, Mr. Bodie withdrew his motion pending completion of a background check of Ms. Chee. The Agency School Board also agreed to re-advertise the position if no selection was made. Ms. Chee accepted another position before her background check was completed and withdrew her application.

On March 14, 2000, the BIA issued a third Vacancy Announcement for the position. This announcement included the Indian preference provision but modified the special education requirement to permit an applicant to acquire the required nine hours of Special Education courses within two years. This modification was made by the BIA's personnel office in order to attract a larger pool of qualified Native American applicants. Once again, Plaintiff applied for the position. Benny Hale, a 52-year-old Navajo male, was selected to fill the position effective July 1, 2000. It is undisputed that Mr. Hale met the qualification requirements set forth in the announcement.

On May 16, 2000, Plaintiff initiated precomplaint counseling with a BIA EEO counselor. On June 9, 2000, Plaintiff filed her EEO complaint with the BIA's EEO office alleging discrimination on the basis of race, gender, national origin, and age when, although qualified, she was not selected for the position on two consecutive occasions and then the criteria were lowered and Mr. Hale hired.

On July 7, 2000, Mr. Hale resigned for personal reasons and, on July 24, 2000, the BIA issued a fourth Vacancy Announcement for the position. And, for the fourth time, Plaintiff applied for the position. After the applications were received, Lester Hudson, Superintendent for Education, recommended that Indian Preference be waived and that Plaintiff be hired for the position. The Agency School Board rejected Mr. Hudson's recommendation and voted to re-advertise the position and to include Navajo culture and language as additional requirements for the job.

On or about October 2, 2000, the BIA issued a fifth Vacancy Announcement for the position. And, once again, Plaintiff applied for the position. This time Colleta Wilson, a 36-year-old bilingual Navajo woman, was selected for the position. It is undisputed that Ms. Wilson was qualified for the position. After Ms. Wilson was selected, her application was submitted to the Office of Indian Education personnel office for an independent review. The personnel office found that Ms. Wilson qualified for the position at the 05 pay level, not at the 06 pay level stated in the Announcement because Ms. Wilson did not have the required professional education experience.[2] On or about January 6, 2001, the BIA issued a sixth Vacancy Announcement for the position at the 05 pay level. Ms. Wilson was again selected for the job.

---

[2] Plaintiff did not qualify for the position at the 06 pay level for the same reason.

On June 30, 2004, Plaintiff filed her Complaint alleging discrimination on the basis of race, national origin, gender, and age as well as retaliation.

## LEGAL STANDARD

Summary judgment is an integral part of the Federal Rules of Civil Procedure, which are intended to "secure the just, speedy and inexpensive determination of every action." *Celotex Corp. v. Catrett,* 477 U.S. 317, 327 (1986) (quoting Fed. R. Civ. P. 1). Under Rule 56(c), summary judgment is appropriate when the court, viewing the record in the light most favorable to the nonmoving party, determines that "there is no genuine dispute over a material fact and the moving party is entitled to judgment as a matter of law." *Thrasher v. B & B Chem. Co., Inc.,* 2 F.3d 995, 996 (10th Cir. 1993).

The movant bears the initial burden of showing "there is an absence of evidence to support the nonmoving party's case." *Celotex*, 477 U.S. at 325. Once the movant meets this burden, Rule 56(e) "requires the nonmoving party to go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Id*. at 324 (quoting Fed. R. Civ. P. 56(e)). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986) (citation omitted).

Although the material submitted by the parties in support of and in opposition to the motion must be construed liberally in favor of the party opposing the motion, *Pittsburg & Midway Coal Min. Co. v. Yazzie,* 909 F.2d 1387, 1427 (10th Cir. 1990), the burden on the moving party may be discharged by demonstrating to the court that there is an absence of evidence to support

the nonmoving party's case, *Celotex,* 477 U.S. at 325.  In such a situation, the moving party is entitled to judgment as a matter of law "because the nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof."  *Celotex,* 477 U.S. at 322.

## DISCUSSION

**I.     Exhaustion**[3]

Exhaustion of administrative remedies is a jurisdictional prerequisite to bringing suit under Title VII.  *See Simms v. Oklahoma ex rel. Dep't of Mental Health & Substance Abuse Servs*., 165 F.3d 1321, 1326 (10th Cir. 1999) (a plaintiff must generally exhaust his or her administrative remedies prior to pursuing a Title VII claim in federal court); *Knopp v. Magaw*, 9 F.3d 1478, 1479 (10th Cir. 1993) (administrative exhaustion is a jurisdictional prerequisite to suit under Title VII).  To exhaust administrative remedies, a Title VII plaintiff generally must present her claims to the EEOC as part of a timely filed EEOC charge.  *See Simms*, 165 F.3d at 1326.  The charge "shall be in writing and signed and shall be verified." 29 C.F.R. § 1601.9, and must, at a minimum, identify the parties and "describe generally the action or practices complained of . . .," *id.* § 1601.12(b).

Federal employees are required to raise concerns about potential discrimination with an EEO counselor within 45 days of the date of the challenged employment action.  *See* 29 C.F.R. § 1614.105(a)(1) (requiring federal employees "to initiate contact with a Counselor within 45

---

[3] The parties dispute whether Indian Preference in hiring is exempted from Title VII coverage.  *See* 42 U.S.C. § 2000e-2(I) (explicitly exempting from Title VII coverage the preferential employment of Indians by Indian tribes or by industries located on or near Indian reservations).  The Court need not reach that issue, however, because, as discussed below, Plaintiff has failed to establish a *prima facie* case under Title VII.

days of the date of the matter alleged to be discriminatory or, in the case of personnel action, within 45 days of the effective date of the action."). In *National Railroad Passenger Corp. v. Morgan*, 536 U.S. 101, 122 S.Ct. 2061 (2002), the Supreme Court held that each discrete incident of discriminatory treatment constitutes its own "unlawful employment practice" for which administrative remedies must be exhausted. *Id*. at 110-13, 122 S.Ct. 2061; *see also Martinez v. Potter*, 347 F.3d 1208, 1211 (10th Cir. 2003) (Title VII plaintiff must "exhaust administrative remedies for each individual discriminatory or retaliatory act."). As a general rule, if the alleged discriminatory act is a discrete employment decision such as failure to hire, termination, demotion, or transfer, then the time within which to file a charge begins to run when an individual first learns of the employment decision.

Plaintiff's EEO complaint cites four discrete incidents of discrimination: 1) the failure to hire her for the position advertised in the November 1999 Vacancy Announcement; 2) the failure to hire her for the position advertised in the January 2000 Vacancy Announcement; 3) the decision to lower the special education requirement in the March 2000 Vacancy Announcement;[4] and 4) the selection of Mr. Hale to fill the position advertised in the March 2000 Vacancy Announcement. Each of these incidents is a discrete act for which administrative remedies must be exhausted.

### A. Failure to Hire Plaintiff for November 1999 Position

Plaintiff knew that she had not been selected for the position announced in the November 1999 Vacancy Announcement no later than January 6, 2000, when the position was re-advertised.

---

[4] For purposes of this analysis, the Court assumes that the modification of the special education requirement is an adverse employment action.

Thus, to exhaust administrative remedies on this claim, contact with an EEO counselor had to be made by February 20, 2000. It is undisputed that Plaintiff did not initiate contact with an EEO counselor until May 16, 2000. Consequently, any claims arising from the November 1999 Vacancy Announcement were not administratively exhausted and may not be pursued in this Court.

### B. Failure to Hire Plaintiff for January 2000 Position

Plaintiff knew that she had not been selected for the position announced in the January 2000 Vacancy Announcement no later than March 14, 2000, when the position was re-advertised. Thus, to exhaust administrative remedies on this claim, contact with an EEO counselor had to be made by February 20, 2000. It is undisputed that Plaintiff did not initiate contact with an EEO counselor until May 16, 2000. Thus, any claims arising from the January 2000 Vacancy Announcement were not administratively exhausted and may not be brought in this Court.

### C. Lowering of Eligibility Requirements

On March 14, 2001, the BIA advertised the position for a third time. As soon as the job announcement was posted, Plaintiff was aware that the requirements for the position had been changed. In fact, Plaintiff wrote a letter to Mr. Hudson on March 18, 2002, complaining that the lowering of the educational requirements was discriminatory. Plaintiff, however, did not raise any complaint about the lowering of the job requirements with an EEO counselor until May 16, 2001--over forty-five days after Plaintiff became aware of the alleged discriminatory act. Consequently Plaintiff cannot bring any claims in this Court arising out of the lowering of the educational requirements.

### D. Hiring of Mr. Hale

In her EEO complaint, Plaintiff asserts that the hiring of Mr. Hale for the position advertised in the March 14, 2001 Vacancy Announcement was discriminatory. It is unclear from the record exactly when Plaintiff became aware the Mr. Hale had been selected for the position. For purposes of this motion, the Court will assume that it was less than 45 days prior to the date Plaintiff initiated contact with the EEO counselor and that this claim was timely exhausted.

### E. Other Claims

Plaintiff did not file any EEO complaints related to the fourth through sixth postings of the job and no claims arising from these acts may be brought in this Court. Similarly, because there is no evidence in the record that Plaintiff filed an EEO charge detailing the retaliatory acts purportedly committed by Defendant, her retaliation claim must be dismissed.

## II. Discrimination Claims

Plaintiff exhausted administrative remedies on one claim--that the hiring of Mr. Hale constitutes discrimination on the basis of sex, race, and national origin.[5] Disparate treatment claims that are supported by indirect evidence of discrimination are examined under the familiar burden-shifting analysis first articulated by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), and refined in *Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248 (1981). Under the burden-shifting method, the plaintiff first has the burden of establishing a *prima facie* case of disparate treatment. *McDonnell Douglas*, 411 U.S. at 802. If the plaintiff succeeds in showing such a *prima facie* case, a presumption of illegal discrimination is created and the burden of production shifts to the defendant to articulate a legitimate,

---

[5] Plaintiff's age discrimination claim was based solely on the hiring of Ms. Wilson for the position advertised in the fifth and sixth Vacancy Announcements--claims that were not administratively exhausted.

nondiscriminatory reason for the challenged act. *Id.* If the defendant meets its burden by producing a "clear and reasonably specific" explanation for the conduct, *Burdine*, 450 U.S. at 258, the plaintiff may show that the reasons offered by the defendant were merely a "pretext" for discrimination, *McDonnell Douglas*, 411 U.S. at 804. Throughout the process of applying the *McDonnell Douglas* test, courts must remain flexible because the test "was never intended to be rigid, mechanized, or ritualistic." *Furnco Const. Corp. v. Waters*, 438 U.S. 567, 577 (1978).

### A. *Prima Facie* Case of Disparate Treatment

To demonstrate a *prima facie* case of disparate treatment involving a failure to promote, a plaintiff must prove that: (i) plaintiff belongs to a protected class; (ii) plaintiff applied for an available position; (iii) despite being qualified, the plaintiff was rejected; and (iv) after plaintiff's rejection, the position remained open or was filled. *McDonnell Douglas*, 411 U.S. at 802.

Plaintiff has provided evidence that she belongs to a protected class, that she applied for an available position, that despite being qualified for the position, she was rejected and that, after her rejection, the position was filled. Thus, Plaintiff has demonstrated a *prima facie* case and the burden shifts to Defendant to articulate a legitimate, non-discriminatory reason for the challenged act.

### B. Legitimate Non-Discriminatory Reason for Adverse Action

Defendant's articulated reason for hiring Mr. Hale rather than Plaintiff is that while both applicants were fully qualified for the position advertised on March 14, 2001, Mr. Hale was Indian Preference eligible. Defendant has met its burden of producing a "clear and reasonably specific" explanation for its decision to hire Mr. Hale.

### C. Evidence that Reason is Pretext

Defendant's rationale for hiring Mr. Hale is unassailable as a matter of law. The Indian Reorganization Act of 1934, also known as the Wheeler-Howard Act, 48 Stat. 984, 25 U.S.C. § 461 *et seq.*, accords an employment preference, referred to as the Indian Preference, for qualified Indians in the BIA. The purpose of Indian preferences, as variously expressed in the legislative history, is to give Indians a greater participation in their own self-government; to further the Government's trust obligation toward the Indian tribes; and to reduce the negative effect of having non-Indians administer matters that affect Indian tribal life. *Morton v. Mancari*, 417 U.S. 535, 541-42 (1974). The Supreme Court has held that the Indian Preference does not constitute racial discrimination. *Id.*

Mr. Hale was a qualified, Indian-Preference-eligible applicant and, in accordance with the Indian Preference provision, he had to be offered the job over a similarly qualified non-Indian. Consequently, the selection of Mr. Hale over Plaintiff cannot constitute unlawful discrimination as a matter of law and Plaintiff's discrimination claims must fail.

## CONCLUSION

**IT IS THEREFORE ORDERED** that Plaintiffs' Motion for Summary Judgment, filed July 1, 2005, **[Doc. No. 27]** is **GRANTED**. Summary judgment is hereby granted in favor of Defendant on all claims.

Dated this 28th day of March, 2006.

_____
MARTHA VAZQUEZ
U. S. DISTRICT COURT JUDGE

Attorney for Plaintiff:
    Gilbert J. Vigil, Esq.

<u>Attorney for Defendant:</u>
    David Iglesias, Esq.